United States District Court
Southern District of Texas
**ENTERED**
December 24, 2015
David J. Bradley, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CRIMINAL NO. 2:15-432 |
| | § | |
| ELIGIO SAN MIGUEL MENDEZ, | § | |
| Defendant. | § | |

### MEMORANDUM OPINION & ORDER

Defendant Eligio San Miguel Mendez was indicted for being a felon in possession of two firearms and ammunition, to wit: a Taurus International .38 super caliber revolver, Glock Model 26 9mm handgun, 5 rounds of Winchester .38 caliber ammunition, 30 rounds Federal 9mm ammunition, 1 round Federal .40 caliber ammunition, 1 round DRT 9mm ammunition, and 5 rounds Remington 9mm ammunition. Pending before the Court is Defendant's Motion to Suppress Evidence (D.E. 26) and supplemental briefing (D.E. 29, 40), to which the Government has responded (D.E. 28).

### 1. Background

An evidentiary hearing on Defendant's motion was held on November 18, 2015, during which Texas Department of Public Safety (DPS) Special Agent Richard Russell, Corpus Christi Police Department (CCPD) Officer Adam Thurman, and Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) Special Agent Juan Hernandez testified as follows. *See* 11/18/2015 Tr., D.E. 38.

On February 18, 2015, following a roughly one-month undercover investigation into narcotics trafficking and gang activity in Corpus Christi, Texas, SA Russell obtained a search warrant on Defendant's residence. During the investigation, SA Russell received information

1

that Defendant was an unstable individual with an extensive criminal history who had firearms at his residence. For this reason, SA Russell requested a warrant authorizing a "no-knock" entry and elected to wait for Defendant to leave the residence and detain him before executing the warrant.

On February 20, 2015, before executing the warrant, SA Russell utilized a surveillance team at Defendant's residence. SA Russell saw Defendant outside the residence and observed several people stop and conduct what he believed to be hand-to-hand drug transactions with Defendant. Defendant and a woman then got into a car and left the residence. SA Russell immediately radioed CCPD Officer Thurman, who conducted a traffic stop to detain Defendant and bring him back to his residence. Defendant was stopped less than one minute after leaving and within a half a mile of his residence.

At the time of the stop, Defendant was identified as the driver, and the front passenger was identified as his common law wife, Crystal Rodriguez. Defendant was frisked, detained, and placed into the back seat of Officer Thurman's patrol car. Defendant was not questioned at this time and was only asked for identifying information. Officer Thurman then conducted a security sweep of Defendant's car and found an object tightly wrapped in a blue bandana inside Rodriguez' purse, which he believed was a firearm. The object was later determined to be a revolver, fully loaded with five rounds. Also inside the purse was a green plastic bag containing synthetic marijuana.

Meanwhile, SA Russell advised agents at the residence that Defendant was detained. Once the scene was determined to be secure, Defendant was transported back to his residence. The entry team executed the search warrant and uncovered synthetic marijuana, several rounds of loose ammunition, and an empty black handgun case.

2

Once the search was completed, Defendant was transported to the DPS station in Corpus Christi, placed under arrest for being a felon in possession of ammunition, and advised of his *Miranda* warnings. During a debrief interview, Defendant described a Glock handgun that he had at his residence. SAs Russell and Hernandez returned to the residence to try and locate the Glock. When they arrived, Defendant's father, who also lived at the residence and paid rent on the property, gave written consent to search the residence. Agents located and seized a loaded Glock handgun in the location described by Defendant.

## II. Defendant's Motion to Suppress

Defendant now moves to suppress: (1) any evidence acquired as a result of the stop, *i.e.*, the .38 caliber revolver and 5 rounds Remington 9mm ammunition;  (2) any fruits of any observation or search of the interior or of the cargo area of the vehicle;  (3) any post-detention statements by Defendant, *i.e.*, where the Glock was located in the house; and (4) any other evidence arrived at directly or indirectly by exploitation of the evidence directly acquired, *i.e.*, the Glock Model 26 9mm handgun and 30 rounds Federal 9mm ammunition. Defendant acknowledges that the ammunition found in his home while agents executed the search warrant was lawfully discovered and does not move to suppress this evidence.

## III. Analysis

### A. Admissibility of Evidence Uncovered During the Traffic Stop

According to Defendant, because the stop of his vehicle was unrelated to the search warrant of his residence and officers did not have any other reason to stop him, the stop was unlawful under the Fourth Amendment. As such, all evidence obtained as a result of the stop should be suppressed as fruits of an illegal detention.

The Government maintains that the traffic stop was lawful because it is permissible to detain occupants pending completion of a search warrant of a premises, citing *Michigan v. Summers*, 452 U.S. 692 (1981). In *Summers*, the Supreme Court identified three law enforcement interests for detaining occupants while executing a search warrant: (1) preventing flight in the event that incriminating evidence is found; (2) the interest of minimizing the risk of harm to the officers; and (3) facilitating the orderly completion of the search. *Id.* at 702–03. The Government also cites *United States v. Cavazos*, wherein the Fifth Circuit, under *Summers*, found a traffic stop and detention of a defendant justified where officers who observed the defendant leave the premises to be searched "had to radio uniformed officers to make the stop" and there was "nothing to suggest that the vehicle was not pulled over as soon as practicable." *United States v. Cavazos*, 288 F.3d 706, 712 (5th Cir. 2002). The Supreme Court has since limited the rule in *Summers* to the "immediate vicinity of the premises to be searched." *Bailey v. United States*, 133 S. Ct. 1031, 1041 (2013) (holding that officers were not justified in stopping and detaining the defendant roughly five minutes after leaving his residence (approximately 1 mile away) solely on the basis of a search warrant). The Court did not define "immediate vicinity," but stated that "courts can consider a number of factors to determine whether an occupant was detained within the immediate vicinity of the premises to be searched, including the lawful limits of the premises, whether the occupant was within the line of sight of his dwelling, the ease of reentry from the occupant's location, and other relevant factors." *Id.* at 1042. The *Bailey* Court further concluded that if officers have reasonable suspicion of criminal activity, they can instead rely on *Terry v. Ohio*, 392 U.S. 1 (1968), in order to detain the suspect for questioning. *Id.* at 1039.

Here, Defendant was stopped roughly half a mile away from his residence, and there was no evidence to suggest that he intended to return to the residence or otherwise posed a risk to the

officers' safety. Accordingly, Officer Thurman was not justified in stopping Defendant's vehicle and detaining him solely incident to the search warrant. *See Bailey*, 133 S. Ct. at 1042; *United States v. Chambers*, 132 Fed. App'x 25, 31 (2005) (unpublished) ("Other circuits have held that, without other extenuating circumstances, a distance of one block or three blocks is too remote to justify a detention while a search warrant is being executed, thus a distance in excess of a few blocks is too remote as well."). The Government argues that Officer Thurman was nonetheless justified in conducting a *Terry* stop, as SA Russell testified that he witnessed Defendant conduct several hand-to-hand drug transactions immediately before he got into his car and drove away, and he believed it would have been appropriate to stop Defendant to investigate further. However, SA Russell did not relay this information to Officer Thurman, and Defendant was not questioned about these alleged drug transactions during the traffic stop. Accordingly, this cannot be classified as a *Terry* stop.

The Court finds that the stop of Defendant's car incident to the search warrant was unreasonable. "Because the stop was unreasonable, the resulting search and seizure were also illegal." *United States v. Granado*, 302 F.3d 421, 424 (5th Cir. 2002). Accordingly, the .38 caliber revolver and 5 rounds Remington 9mm ammunition found in Defendant's car following the stop should be suppressed.

**B. Admissibility of Evidence Uncovered Following Defendant's Formal Arrest**

Defendant argues that the Glock handgun and ammunition found during the second search of his residence based on statements he gave to law enforcement at the DPS station should also be suppressed as fruit of the poisonous tree. According to Defendant, he was in custody continuously from the point of his unlawful arrest, and he would not have been available for a statement but for the unlawful traffic stop and his subsequent detention.

5

"All evidence derived from an illegal search or seizure must be suppressed, unless the government shows there was a break in the chain of events sufficient to refute the inference that the evidence was the product of the Fourth Amendment violation." *Granado*, 302 F.3d at 424 (citing *Brown v. Illinois*, 422 U.S. 590, 602–04 (1975)). Courts "examine the totality of the circumstances, focusing especially on (1) the temporal proximity of the violation and the discovery of the evidence or statement; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the initial misconduct." *Id.*

Citing *United States v. Chambers*, Defendant maintains that because his initial detention during the traffic stop was illegal, "any statements derived as fruit of that arrest should have been suppressed." 132 Fed. App'x 25, 31 (2005) (unpublished). In *Chambers*, officers obtained a search warrant for the defendant's house, but before the search warrant could be executed, the defendant got into his truck and drove away. *Id.* at 27. Officers stopped the defendant in a nearby parking lot and transported him back to his residence. *Id.* Before searching the house, officers gave the defendant his *Miranda* warnings and asked him to make a statement. *Id.* At that time, the defendant made a number of incriminating statements, including telling officers where drugs and weapons could be found in the house. *Id.* at 28.

The Government argues that as soon as agents discovered the ammunition inside Defendant's residence, they had probable cause to arrest Defendant for being a felon in possession of ammunition, which they did. Unlike *Chambers*, Defendant's statement about the location of the additional firearm in his residence was not made during his detention incident to the search warrant, but instead following his formal arrest at the DPS station based on evidence discovered during the search.

The Court finds that Defendant's arrest for being a felon in possession of ammunition was sufficient to constitute a break in the chain of events from his detention incident to the search warrant. Accordingly, the Glock Model 26 9mm handgun and 30 rounds Federal 9mm ammunition, which were discovered after Defendant's father gave written consent to search the residence a second time, are admissible. Any statements Defendant made at the DPS station after he was arrested and *Mirandized* are also admissible.

## IV. Conclusion

For the reasons set forth above, Defendant's motion to suppress (D.E. 26) is **GRANTED** in part and **DENIED** in part.

It is so **ORDERED**.

**SIGNED** this 23rd day of December, 2015.

_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE

7